# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEE FINDLEY, | ) Case No.: 1:18-cv-00341-BAM |
| Plaintiff, | ) |
| v. | ) **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | ) |
| Defendant. | ) |

## INTRODUCTION

Plaintiff Steven Lee Findley ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 9, 10.)

and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on August 27, 2014. AR 147-53.[3] Plaintiff alleged that he became disabled on October 4, 2013, due to chronic obstructive pulmonary disorder ("COPD"), emphysema, depression, anxiety, learning/memory problems, back pain and alcoholism. AR 169, 172. Plaintiff's application was denied initially and on reconsideration. AR 81-85, 87-91. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Vincent A. Misenti held a hearing on September 21, 2016, and issued an order denying benefits on November 19, 2016. AR 7-26, 27-60. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on September 21, 2016, in Stockton, California. Plaintiff appeared in Fresno by video with his attorney, Jonathan Pena. Impartial Vocational Expert ("VE") Judith Najarian also appeared. AR 27, 29.

In response to questioning by the ALJ, Plaintiff testified that he was 59 years of age with a high school diploma. Plaintiff confirmed his alleged onset date of October 4, 2013. When asked why he stopped working, Plaintiff testified that he was dismissed. He believed it was because his conditions and issues were affecting his job. When asked about his diagnosed impairments, Plaintiff reported that he has COPD, emphysema, arthritis in his lower back, and nervous anxiety. AR 30-32.

When asked about COPD symptoms, Plaintiff reported that he has shortness of breath, if he exerts himself, stands up quickly or walks too far. He also has severe pain in his chest, with coughing and wheezing. He takes asthma medication and has a rescue inhaler, but does not use oxygen or a breathing machine. He explained that environmental irritants, such as the Fresno air, triggers his COPD. AR 33-37.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked about his history of smoking, Plaintiff testified that he started smoking when he was about 9 or 10 years old. He has a strong addiction and has yet to quit, but has been cutting down significantly. He is down to eight or ten cigarettes per day from about three packs per day. He confirmed it was probably the major reason for his COPD. AR 35.

When asked about his history of alcoholism, Plaintiff testified that it is very serious. When he drinks, he tends to drink to the point of hospitalization. He has been through AA, programs at the VA and the Salvation Army program. He has knowledge of the disease and maintains his sobriety by going to AA and a VA support group. As of the date of the hearing, he had been sober for two years and one month. AR 35-36.

When asked about his back pain, Plaintiff testified that it is a nagging pain in his lower back that he attributes to arthritis. He has had back problems ever since he could remember, but it has worsened. At his last job, he had a hard time sitting in his truck too long. He would have to get out and walk around. He has no other symptoms with his back, such as tenderness. He takes a non-narcotic medication for the pain, which helps. He also attended physical therapy and had home exercises, but it hurt more than it helped, so he stopped. He has not had any injections or surgeries for his back. AR 37-39.

When asked about his abilities. Plaintiff reported that he could sit no more than 45 minutes or an hour and stand no more than 45 minutes or an hour. He can walk about two blocks and can lift no more than 15 pounds. AR 39. When asked about daily activities, Plaintiff testified that he does dishes, cooks simple meals, cleans, and does laundry. He can take care of everything, but in a slower fashion. When asked about outside activities, Plaintiff testified that he goes grocery shopping, pays bills, gets his car serviced and sometimes drives up into the hills to get away. He tries to keep as busy and as active as he can. He likes to do car models and watch TV. AR 40-41.

When asked what would prevent him from doing his last job as a driver, Plaintiff reported that the main reason was his back. He cannot sit in a truck for too long. He reported that his COPD did not begin to hamper his job in the last two or three years. AR41- 43.

When asked about his drinking, Plaintiff reported that he began binge drinking around 1990. He managed to maintain work because the company changed hands several times. He would

sometimes miss work for a whole month. He does not have a history of DUIs, receiving only one in 1995. After that, he would not get in a car if he binged. AR 43-44.

When asked about medications, Plaintiff testified that he takes Tramadol about four times a day if his back is hurting. If it is not as bad, he will take Naprosyn. Tramadol is a stronger medication. After taking medications, his back pain would be about seven out of ten. AR 44-45.

When asked about mental disorders or impairments, Plaintiff reported that he has a comprehension problem and cannot learn. AR 45. He also has an anxiety problem for which he takes medication and sees a psychiatrist every four months. AR 46.

In response to questions from his attorney, Plaintiff testified that he received equipment from the VA, including a TENS unit, a chamber for his inhaler and a Nebulizer machine that helps with his COPD. AR 47-48. Plaintiff further testified that he has been issued a walker with a seat, which would arrive in a few days, to assist him with walking long distances or standing. He does not use any other assistive devices, such as a shower chair. AR 48-49.

When asked about his prior job, Plaintiff testified that he could drive about an hour before he had to stop to take a break. He would pull over to the side of the road, stand outside the truck and walk around for about 15-20 minutes. In terms of productivity, it was taking him longer to do a job. AR 49-50.

When asked about his conditions, Plaintiff testified that he has muscle spasms once in a while, but no swelling. He has degenerative disc disease in his back, but his doctors have not talked to him about any kind of intervention. AR 50. He has not been hospitalized as a result of his breathing issues. AR 50-51. When asked about his medications, Plaintiff testified that he had side effects of dizziness lasting about an hour. AR 52-53.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Judith Najarian. The VE classified Plaintiff's past work to include material handler and truck driver light, performed at heavy. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual with Plaintiff's past jobs and education who was capable of performing a medium range of work eroded by the following: frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling, occasionally climbing ladders and scaffolds, no

commercial driving, and must avoid concentrated exposure to fumes, dust, odors, gases, poorly ventilated areas and chemicals. The VE testified that this hypothetical individual could not perform any of Plaintiff's past jobs as actually or generally performed in the national economy. However, there would be other jobs in the national economy that this individual could perform, such as counter supply worker and meat clerk. This individual would not have any transferable skills to light work. AR 54-56.

For the second hypothetical, the ALJ asked the VE to assume an individual with the same limitations as the first hypothetical except that this individual, after sitting for an hour, would have to stand and walk for about 15 to 20 minutes. The individual could continue to work, but would be unable to sit down for 20 minutes. The VE testified that this would not change the response to her answers for the first hypothetical. AR 56. However, if that individual could stand and walk for one hour and then need to sit for 20 minutes while still working, the individual could not perform any of Plaintiff's past relevant work. There would be no medium jobs available and, based on the grids under light work, the individual would be disabled. AR 57.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 7-22. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since October 4, 2013, his alleged onset date. AR 12. The ALJ identified COPD and back pain indicative of degenerative disc disease as severe impairments. AR 12-15. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 15. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work except he could frequently climb ramps and stairs, frequently balance, stoop, kneel, crouch, and crawl, occasionally climb ladders and scaffolds, never perform commercial driving and must avoid concentrated exposure to fumes, dusts, odors, gases, poorly ventilated areas, and

chemicals. AR 15-20. With this RFC, the ALJ found that Plaintiff could not perform his past relevant work, but could perform other jobs existing in significant numbers in the national economy, such as counter supply worker and meat clerk. AR 21. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[4]

In this case, the ALJ assessed an RFC that limited Plaintiff to medium work with additional postural, environmental and vocational restrictions. AR 15. Plaintiff alleges, however, that the ALJ's RFC determination that Plaintiff could perform the lifting and/or carrying requirements of medium work is not supported by substantial evidence because (1) the ALJ did not properly evaluate the medical evidence; (2) the ALJ erred in relying on the State agency physicians' opinions, and (3) the ALJ did not adequately consider Plaintiff's subjective symptom allegations.

**A.  The ALJ Properly Evaluated the Medical Evidence**

Plaintiff first contends that the ALJ did not properly evaluate medical evidence of record, demonstrating that his ability to lift and/or carry deteriorated during the pendency of his claim. Despite a recitation of certain medical evidence (and reference to Plaintiff's subjective complaints), Plaintiff neither identifies any objective medical evidence that the ALJ failed to consider, nor does he cite objective medical or opinion evidence demonstrating an inability to perform the lifting and carrying requirements of medium work. (Doc. No. 18 at 11-13.)

Despite the failure to identify specific error, the Court nevertheless reviews the ALJ's evaluation of the medical evidence. As to the assertion that Plaintiff's ability to lift and/or carry deteriorated during the pendency of his claim, the Court finds that the ALJ properly considered the medical evidence spanning 2014 through 2016. AR 17-20. Critically, with respect to Plaintiff's back pain, the ALJ considered evidence that Plaintiff's back pain was "generally abated with conservative measures." AR 20, 1324 (stable gait in July 2014), 1625 (no problems reported), 2229-31 (degenerative disc disease; pain usually resolved after resting a few minutes; no spinal tenderness, no muscle tightness, no erythema; ordered meloxicam, capscain cream and TENS unit consult), 2410 (continued use of volateren cream and naproxen in June 2015). Plaintiff does not cite any objective

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

medical evidence, such as diagnostic testing or physician evaluations, to contradict this finding. Instead, Plaintiff references his subjective complaints of back pain and the corresponding lay testimony of his sister. (Doc. No. 18 at 11-13, 14.) As discussed below, however, the ALJ properly discounted Plaintiff's subjective complaints, and Plaintiff has not challenged the ALJ's evaluation and findings regarding his sister's testimony.

With respect to Plaintiff's COPD, the ALJ determined from the medical evidence that Plaintiff's pulmonary function tests showed generally moderate findings, and his COPD appeared controlled with the use of inhalers. AR 20, 2231 (moderate COPD, currently on spiriva, Symbicort and albuterol), 2443 (moderate COPD, continued use of spiriva, Symbicort). As to Plaintiff's level of functioning, the ALJ expressly considered the pertinent objective medical evidence regarding Plaintiff's COPD. In particular, the ALJ reviewed pulmonary function testing completed in 2015 and evaluated by Dr. Andres F. Escobar-Naranjo, a pulmonologist, which identified only "mild obstructive defect" and "significant response to bronchodilators." AR 18, 2390. Although Plaintiff attempts to rely on this study to demonstrate that his COPD worsened after 2014, citing a 0.5L drop in his FEV1 (*Cf.* AR 2304 (FEV1 of 1.96L (49% of predicted) pre-bronchodilator and 2.44L (61% of predicted) post-bronchodilator on July 13, 2015); 605 (FEV1 of 2.42L (61% of predicted) pre-bronchodilator and 2.57L (64% of predicted) on March 12, 2014), Plaintiff's argument is not compelling. According to the studies, Plaintiff experienced only a 0.13L drop in his FEV1 post-bronchodilator usage, and by 2015 his COPD was described as a "mild obstructive defect" with "significant response to bronchodilators." AR 2390. This latter study is consistent with the ALJ's determination that Plaintiff experienced significant improvement with bronchodilators. And, as the Commissioner points out, this improvement occurred notwithstanding Plaintiff's refusal to stop smoking, contrary to his providers' repeated admonishments. (*see, e.g.*, AR 1388 (patient continues to smoke, not interested in quitting), 2231 (strongly advised to quit smoking, but plaintiff reported he was not ready, not interested in Chantix), 2233 (patient not willing to quit smoking, not interested in referral to smoking cessation clinic or medication to help with quitting), 2420 (counseled again regarding smoking cessation). Additionally, the ALJ considered a physical examination completed in August 2016, by Dr. Suneetha R. Dandala, who identified diffuse wheezing, but the absence of any rales or rhonchi and no display of

increased work of breathing. Dr. Dandala also confirmed improvement in Plaintiff's FEV1 with the use of bronchodilators. AR 18, 2322-24.

Based on the above, the Court finds that the ALJ's evaluation of Plaintiff's COPD and back pain is supported by substantial evidence in the medical record.

**B.    The ALJ Did Not Err in Relying on the Opinions of the State Agency's Medical Consultants**

According to the record, the only expert medical opinions regarding Plaintiff's RFC are those of the state agency physicians, Drs. I. Ocrant and Lydia Kiger. On November 12, 2014, following a review of the record, Dr. Ocrant opined that Plaintiff could perform medium work with frequent postural limitations. Specifically, Dr. Ocrant opined that Plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand or walk for about six hours in an 8-hour workday, could sit about six hours in an 8-hour workday, frequently could climb ramps, stairs, ladders, ropes and scaffolds, frequently could stoop, kneel, crouch and crawl and did not have any manipulative, visual, communicative or environmental limitations. AR 66-67.

On February 5, 2015, following review of records dated through December 30, 2014, Dr. Kiger affirmed Dr. Ocrant's opinion that Plaintiff could perform medium work. AR 74. Specifically, Dr. Kiger opined that Plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand and walk for about 6 hours in an 8-hour workday, could sit about six hours in an 8-hour workday, frequently could climb ramps, stairs, ladders, ropes and scaffolds, frequently could stoop, kneel, crouch and crawl and did not have any manipulative, visual, communicative, or environmental limitations. AR 76-77.

The ALJ considered the opinions of Drs. Ocrant and Kiger and assigned them "great weight." AR 19. In so doing, the ALJ acknowledged that these opinions were rendered by non-treating, non-examining medical sources, but nevertheless found their opinions to be based on a thorough review of the available medical records and a comprehensive understanding of agency rules and regulations. The ALJ further found that their opinions were internally consistent and well supported by a reasonable explanation and the available evidence. AR 19.

1    Plaintiff now asserts that it was error for the ALJ to rely on the opinions of Drs. Ocrant and
2    Kiger, because they only reviewed medical records through December 2014, and did not review any
3    records post-dating their opinions. (Doc. No. 18 at 13-14.) Plaintiff suggests that the records post-
4    dating their opinions would have changed those opinions. (*Id.* at 14.)
5    The Commissioner counters that the ALJ did not err because he reviewed and discussed the
6    entire record (including the treatment records that post-dated the state agency physicians' opinions),
7    and reasonably concluded that the evidence submitted after December 2014 required additional
8    postural, environmental and vocational limitations in Plaintiff's RFC. (Doc. No. 19 at 14-15.) The
9    Court agrees.
10   An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all
11   the relevant evidence in [one's] case record," rather than a single medical opinion or piece of
12   evidence. 20 C.F.R. § 404.1545(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is
13   clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual
14   functional capacity."). Further, an ALJ's RFC determination need not precisely reflect any particular
15   medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th
16   Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at
17   the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in
18   an environment without public contact or background activity").
19   Here, the ALJ considered not only the opinions of the state agency physicians, but also
20   evaluated the objective medical evidence pertaining to Plaintiff's back condition and COPD post-
21   dating their opinions. The Court does not find error in the ALJ's reliance on the opinions of the state
22   agency physicians. Although the ALJ assigned "great weight" to the state agency physicians'
23   opinions that Plaintiff could perform medium work, those opinions were not dispositive and the ALJ
24   ultimately formulated an RFC that included additional postural, environmental and vocational
25   limitations. These additional limitations accounted for Plaintiff's COPD and back pain by including
26   limitations to frequently climbing ramps and stairs, frequently balancing, stooping, kneeling,
27   crouching, and crawling, occasionally climbing ladders and scaffolds, never performing commercial
28

driving and avoiding concentrated exposure to fumes, dusts, odors, gases, poorly ventilated areas, and chemicals. AR 15.

Plaintiff's suggestion that the records post-dating their opinions would have changed the opinions of the state agency physicians is mere speculation and not persuasive. (Doc. No. 18 at 14.) Likewise, Plaintiff's suggestion that the ALJ had a duty to further develop the record also is not persuasive. (*Id.* at 15.) "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. Although Plaintiff contends that the ALJ relied on "outdated medical records," this is not correct. The ALJ summarized record evidence spanning 2013 through 2016 and found with the support of that record that Plaintiff had not established he was disabled. AR 17-18. The record contained what appears to be Plaintiff's complete treatment records, which supported the ALJ's findings and did not present an ambiguity or inadequacy. Indeed, the Court notes that at the hearing, the ALJ asked Plaintiff's attorney if the record was complete, and he responded, "It is indeed." AR 30. The Court therefore finds that the ALJ was not obligated to further develop the record.

Plaintiff's apparent implication is instead that the ALJ erred by failing to obtain additional medical source opinions. However, Plaintiff failed to submit any medical opinions from a treating or examining physician as to his ability to work or his functional limitations. Because it is the Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social

11

Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are … disabled….").

      **C.**    **The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony**

Plaintiff argues that the ALJ improperly rejected his subjective symptom testimony. In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but rejected his statements concerning the intensity, persistence and limiting effects of those symptoms. AR 20. In so doing, the ALJ provided several specific, clear and convincing reasons for discounting Plaintiff's testimony.

First, the ALJ discounted Plaintiff's statements regarding the limiting effects of his symptoms as uncorroborated by the medical evidence. AR 17, 20. Although lack of medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In this instance, the ALJ provided a detailed summary of the medical record in developing Plaintiff's RFC and evaluating his allegations of disabling impairments. With respect to the Plaintiff's COPD, the ALJ cited a provider's notation in 2013 that Plaintiff's condition was stable. AR 17, 2247. The ALJ also noted that diagnostic imaging did not support the degree of severity alleged, citing imaging studies confirming COPD, but showing Plaintiff's lungs were stable with no acute infiltrates, pleural effusion, or pneumothorax. AR 17, 1221, 1225. Although pulmonary function testing showed moderate airflow obstruction in 2014, subsequent testing in 2015 showed only "mild obstructive defect," increased lung capacity, normal lung volumes, normal diffusion and significant response to bronchodilators. AR 18, 2390. In 2016, Plaintiff had diffuse wheezing, but no rales, rhonchi, or increased work of breathing, and improvement with

bronchodilators. AR 18, 2322-23. With respect to Plaintiff's back pain, the ALJ noted that diagnostic imaging revealed lumbar degenerative disc disease, but physician examination showed generally benign findings, such as a normal gait and normal limb strength, normal upper and lower extremity strength, and no spinal tenderness or muscle tightness. AR 17, 1220, 1324, 1622, 1625, 1631, 1633, 2230.

Second, the ALJ appropriately considered that Plaintiff's allegations of debilitating symptoms were inconsistent with record evidence concerning Plaintiff's daily activities. AR 19. An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–1113 (9th Cir. 2012); *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (engaging in daily activities that are incompatible with the severity of symptoms alleged can support an ALJ's determination to discount a claimant's testimony regarding the severity of those symptoms); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (claimant's testimony about daily activities, including taking care of personal needs, preparing easy meals, doing light housework and shopping for groceries, may be seen as inconsistent with the presence of a disabling condition). In this instance, Plaintiff alleged that he loses his breath upon any type of exertion and could only walk about a half a mile, but the ALJ noted that Plaintiff was able to complete laundry and shop in stores for food, clothing and hobbies, which Plaintiff did twice a week for about an hour each time. AR 19, 184-85. The records cited by the ALJ also indicated that Plaintiff was able to cook simple meals, clean daily, do simple household repairs, go out on his own, drive a car, build model cars, fly radio-controlled helicopters, and attend AA meetings and church. AR 184-86.

Plaintiff asserts that the ALJ erred in assessing Plaintiff's daily activities by failing to consider Plaintiff's testimony that he can only perform household chores for 20 minutes before needing to stop and rest. (Doc. No. 18 at 18.) Even if Plaintiff's activities suggest some difficulty functioning, the ALJ reasonably found those activities inconsistent with Plaintiff's level of alleged impairment. *See Molina*, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Third, the ALJ considered that Plaintiff stopped working due to a business-related downsizing rather than because of allegedly disabling impairments. AR 19, 172. An ALJ properly may discount a claimant's subjective testimony where the alleged impairment is not the reason that the claimant stopped working. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding testimony that claimant's diabetes was not the reason he stopped working undermined his claims that his diabetes was among his disabling conditions); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding ALJ properly discounted allegations of pain where plaintiff reported at the hearing and to at least one doctor that he left the job because he was laid off, not because he was injured.); *see also Clausen v. Comm'r of Soc. Sec.,* No. 1:17-CV-01484-SAB, 2019 WL 498989, at *17 (E.D. Cal. Feb. 8, 2019) ("An ALJ may consider why a claimant left her last place of employment when making a credibility determination."); *Marti Jean K. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-CV-00109-HZ, 2019 WL 3061561, at *6 (D. Or. July 10, 2019) (ALJ properly found that evidence in the record "that the claimant stopped working for reasons not related to her allegedly disabling impairments," which "strongly suggests that the claimant stopped working because her boss retired, not because her symptoms were limiting.").

Plaintiff complains that the ALJ allegedly failed to consider Plaintiff's "stellar work history" in his analysis. (Doc. No. 18 at 19.) However, "courts have rejected the contention that the ALJ is required to address a claimant's exemplary work history in assessing [his] credibility." *Coffman v. Berryhill*, No. 2:17-cv-2088 CKD, 2018 WL 6419676, at *6 (E.D. Cal. Dec. 6, 2018) (quotation omitted) (collecting cases); *Mora v. Berryhill*, No. 1:17-CV-01470-BAM, 2019 WL 1046253, at *7 (E.D. Cal. Mar. 5, 2019); *Goldman v. Berryhill*, No. 2:17-cv-2450 DB, 2019 WL 498996, at *5 (E.D. Cal. Feb. 8, 2019); *but see Kluthe v. Berryhill,* No. 1:16-CV-00742-JLT, 2018 WL 775298, at *12 (E.D. Cal. Feb. 8, 2018) (finding that ALJ is required to consider work history when assessing credibility).

Fourth, the ALJ considered that Plaintiff's COPD appeared to be controlled with the use of inhalers, and that his back pain appeared to have abated with conservative treatment, including a TENS unit, medication, capsaicin cream and physical therapy. AR 17, 20. That Plaintiff's symptoms responded to conservative treatment was a valid basis for discounting his allegations of debilitating

symptoms. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (favorable response to a conservative treatment is a permissible basis for discounting testimony of disabling pain); *Edginton v. Colvin,* 625 Fed.Appx 334, 336 (9th Cir. 2015) (unpublished) ("The ALJ reasonably concluded that [claimant's] treatment for his back condition was 'routine and conservative' and not the treatment expected for an individual suffering from the disabling symptoms that [claimant] described," where the claimant was treated with medications and a TENS unit), citing *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding severity of an impairment").

As a final matter, Plaintiff contends that the ALJ's assessment of Plaintiff's subjective complaints "did <u>not</u> obviously consider the factors set forth in 20 C.F.R. § 404.1529, as he was required to do." (Doc. No. 18 at 18) (emphasis in original).

Pursuant to § 404.1529, factors relevant to a claimant's symptoms which the ALJ will consider include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Plaintiff's contention that the ALJ did not consider these factors is not persuasive. According to the record, the ALJ expressly stated in his decision that in determining Plaintiff's RFC, he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p." AR 15. As to the claimant's "daily activities," the ALJ considered such evidence, noting, among other things, Plaintiff's ability to shop and complete household chores. AR 19. As to the "location, duration, frequency, and intensity of pain or other symptoms," the ALJ recognized Plaintiff's allegations of "nagging" and "worsened" back pain, worsening shortness of

15

breath, chest pain, wheezing, coughing and muscle spasms, back pain at "seven out of ten, with medication," back pain and stiffness in the mornings and worsened pain when bending forward, and shortness of breath on exertion. AR 16-18. As to "precipitating and aggravating factors," the ALJ acknowledged Plaintiff's assertion of exacerbation of his COPD due to Fresno's air quality and exertion, such as standing up and walking. The ALJ also acknowledged Plaintiff's allegations of aggravated back pain due to walking, sitting and standing, and physical therapy. AR 16. As to the "type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken," the ALJ considered that Plaintiff used a nebulizer machine, a rescue inhaler, meloxicam, capsaicin cream, albuterol, and a trial of Singulair. AR 16-18. As to "treatment, other than medication," the ALJ discussed Plaintiff's use of a TENS unit and a short trial of physical therapy. AR 17-18. As to "any measures the claimant uses or has used to relieve pain or other symptoms," the ALJ noted a home exercise program and reduction in smoking. AR 18. As to "other factors" concerning Plaintiff's functional limitations and restrictions, the ALJ considered Plaintiff's refusal to stop smoking, resistance to physical therapy and that he did not stop working due to any functional limitation or restriction. AR 19-20.

For these reasons, the Court finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error. Even if one of the reasons provided could be found inadequate, there are sufficient other reasons provided to support the assessment of Plaintiff's subjective complaints. *See Batson*, 359 F.3d at 1197.

///
///
///
///
///
///
///
///
///

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Steven Lee Findley.

IT IS SO ORDERED.

Dated: **August 28, 2019**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE